UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| STUART N. BROTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-712-HBG |
| | ) | |
| STATE GOVERNMENT LEADERSHIP | ) | |
| FOUNDATION, a District of Columbia | ) | |
| non-profit corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the

Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings,

including entry of judgment [Doc. 14].

Now before the Court is Defendant's Motion to Dismiss Plaintiff's Counterclaim [Doc. 31]

("Motion to Dismiss") and Defendant's Motion for Judgment on the Pleadings [Doc. 35]. The

Motions are ripe for adjudication. Accordingly, for the reasons further explained below,

Defendant's Motion to Dismiss [**Doc. 31**] is **GRANTED**, and Defendant's Motion for Judgment

on the Pleadings is **DENIED** [**Doc. 35**].

## I.    BACKGROUND

The Court observes that the facts in this case are relatively straightforward. The parties

entered into a written agreement wherein Plaintiff would produce a written report and Defendant

would pay Plaintiff for his work. Plaintiff produced the written report, and Defendant paid Plaintiff

for his work. Later, Defendant claimed that there were issues with Plaintiff's written report, and

Defendant requested that its money be returned. The parties have filed multiple claims against

one another and several dispositive motions. The Court will summarize the history of this case, including the allegations as presented in the pleadings.

The original Complaint [Doc. 1] in this matter was filed on December 29, 2016. In summary, Plaintiff registered a written work, *State Sovereignty Limits on the Federal Power of Preemption: The Federal Communications Commission's Legal Boundaries Under the Communications Act of 1934, As Amended*, ("Final Report") with the United States Copyright Office. [Doc. 1 at ¶ 3]. Plaintiff's Final Report was produced from Defendant's funds based on an agreement between the parties. [*Id.*]. Defendant expressed dissatisfaction with Plaintiff's work, claiming a number of words, estimated at approximately 100 words of a 77,972 word document, constitutes significant plagiarism. [*Id.* at ¶ 13]. Plaintiff attached the terms, funding, engagement agreement ("Agreement") as Exhibit A to the Complaint. [Doc. 1-3]. In the Complaint, Plaintiff explained that his action was a Declaratory Judgment action under the United States Copyright Act, 17 U.S.C. § 101, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. [*Id.* at ¶ 16].

On April 14, 2017, Defendant filed an Answer and Counterclaims [Doc. 5]. With respect to its Counterclaims, Defendant states that on March 12, 2015, the Federal Communications Commission issued a decision preempting North Carolina and Tennessee state laws that limit the expansion of municipal broadband systems beyond their original geographical limits. [Doc. 5 at ¶ 1]. Defendant commissioned Dr. Ford to complete a study on the economic aspects of the issue and commissioned Plaintiff to complete a study on the legal aspects of the issue. [*Id.* at ¶ 6]. The Counterclaims state that on July 14, 2015, the parties entered into the Agreement. [*Id.* at ¶ 8]. Plaintiff was supposed to turn in a written report that would be coordinated with Dr. Ford's report,

which would then be turned into a larger report for distribution by Defendant. [*Id.* at ¶ 10]. The parties agreed that Defendant would pay Plaintiff a total sum of $115,000.00. [*Id.* at ¶ 11].

On September 11, 2015, Plaintiff delivered a written report ("Initial Report") to Defendant. [*Id.* at ¶ 13, Ex. 1]. Dr. Ford reviewed Plaintiff's Initial Report in order to coordinate its inclusion into his (Dr. Ford's) work. [*Id.* at ¶ 14]. On Dr. Ford's review, however, it became clear that the majority of the Initial Report was plagiarized from several sources, including the work of Lawrence Spiwak, portions of U.S. Advisory Commission on Inter-Governmental A1 Relations, Study A-121, and a brief by the Department of Justice. [*Id.* at ¶¶ 14-15]. Defendant alerted Plaintiff to the plagiarism in the Initial Report on a conference call on or about October 16, 2015, and Defendant asked Plaintiff to re-write the report or create original work product that Defendant could use. [*Id.* at ¶ 17]. Plaintiff agreed to revise the Initial Report accordingly. [*Id.*].

Defendant's Counterclaims state that in or around November 2015, Plaintiff submitted the Final Report, but Defendant determined that significant portions of the Final Report were plagiarized. [*Id.* at ¶¶ 18-19, Ex. 4]. The Counterclaims allege that the Final Report was just as unusable as the Initial Report. [*Id.* at ¶ 19]. Defendant advised Plaintiff of the same. [*Id.* at ¶ 22]. Defendant states that it would have suffered great harm to its reputation, fundraising, and future similar endeavors if it were to have published Plaintiff's plagiarized report. [*Id.*]. The Counterclaims submit that Plaintiff failed to deliver, as promised in the Agreement, and that Defendant paid Plaintiff $115,000 for recycled work product that in no way reflected the comprehensive and authoritative research and analysis Plaintiff advertised. [*Id.* at ¶ 23].

Defendant alleges that it has attempted to resolve the dispute with Plaintiff to recover the $115,000, but Plaintiff refuses to repay Defendant. [*Id.* at ¶ 24]. The Counterclaims state that according to Plaintiff's Complaint, he apparently registered his plagiarized work with the

Copyright Office in June 2016, after Defendant made multiple attempts to resolve the dispute. [*Id.*] The Counterclaims allege breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, and alter ego. [*Id.* at ¶¶ 25- 44].

Subsequently, both parties filed dispositive motions. Defendant filed a motion for judgment on the pleadings, and Plaintiff moved to dismiss Defendant's Counterclaims. On February 17, 2018, the Court issued a ruling on the parties' dispositive motions. Specifically, the Court dismissed Plaintiff's Declaratory Judgment action and Defendant's alter ego claim. [Doc. 29].

On March 21, 2018, Plaintiff filed an Answer to Defendant's Counterclaims and asserted his own Counterclaims. [Doc. 30]. In his Counterclaims, Plaintiff alleges that he delivered the work product, and almost one year after the delivery of a revised report to Defendant, Defendant demanded its money back. [*Id.* at ¶ 1]. Plaintiff alleges that in this interim period, the Sixth Circuit issued an opinion that negated the need for Plaintiff's work for Defendant's purpose. [*Id.*].

Plaintiff's Counterclaims state that on July 14, 2015, Plaintiff and Defendant entered into the Agreement. [*Id.* at ¶ 6]. The Agreement had five distinct elements, which included researching and analyzing different areas, reviewing Supreme Court precedents, and producing a written report coordinated with Dr. Ford for inclusion into a larger report. [*Id.* at ¶ 7]. In exchange for the work under the Agreement, Defendant agreed to pay Plaintiff $115,000 in two installments. [*Id.* at ¶ 10]. On July 15, 2015, Defendant wired the first installment of $57,500 to Plaintiff. [*Id.* at ¶ 11].

Plaintiff's Counterclaims allege that he submitted the report to Defendant on September 4, 2015. [*Id.* at ¶ 22]. Upon Plaintiff's request, the balance of the payment was transferred to him on September 11, 2015, which was before the time that the Agreement specified that the balance would need to be paid. [*Id.* at ¶¶ 14-15]. Defendant's Policy and Issue Advocacy Director, Micah

Ketchel ("Ketchel"), indicated via email that he "really enjoyed diving into it and learned a great deal." [*Id.* at ¶ 16].

On October 5, 2015, Ketchel again expressed satisfaction with Plaintiff's work based on Defendant's complete review of the report. [*Id.* at ¶ 17]. Ketchel contacted Plaintiff again on October 9, 2015, to assess Plaintiff's interest in penning a piece that would be pitched to major outlets, including Forbes or the Wall Street Journal. [*Id.* at ¶ 19]. Plaintiff states that at some point, he was contacted by a third party, who is not a party of the Agreement, indicating that Defendant already had provided him/her a copy of the draft report. [*Id.* at ¶ 21]. Plaintiff alleges that the Agreement provides that the terms thereof shall be kept confidential by the parties and may not be disclosed to any third party. [*Id.*].

The Counterclaims state that on October 16, 2015, Plaintiff spoke to Ketchel and Matt Walker, a representative with Defendant, and for the first time, they indicated that they had questions regarding the originality of Plaintiff's report. [*Id.* at ¶ 22]. Plaintiff indicated that any specific items they raised could be addressed in a revision, and Plaintiff requested that Defendant provide written details so that a revision could be undertaken. [*Id.* at ¶ 23]. Plaintiff also requested on the telephone call that Defendant provide him with a copy of Dr. Ford's draft report, which was part of the coordination process stipulated to in the Agreement. [*Id.* at ¶ 24]. A copy of Dr. Ford's report was never provided to Plaintiff. [*Id.*].

Defendant requested that Plaintiff revise the report and utilize a software program called Grammarly to detect any citation errors or omissions. [*Id.* at ¶ 25]. During this revision process, Plaintiff's computer was hacked, which resulted in a corruption of the electronic file of the draft report. [*Id.* at ¶ 26]. Plaintiff immediately notified Defendant of the issue and stated that the only real solution would be to have the revised report prepared by re-inputting the original version,

which had been preserved in hard-copy format. [*Id.* at ¶ 27]. Plaintiff alleges that without explanation, Defendant notified the third party (the same third party referenced above), and the third party offered to provide the preserved hard-copy format to Plaintiff. [*Id.*].

Later, on November 6, 2015, a memorandum ("Memorandum") was provided to Defendant, which contained details regarding the Grammarly scan. [*Id.* at ¶ 28]. The Grammarly scan showed 132 citation errors. [*Id.*]. The Memorandum explained how to correct such issues. [*Id.* at ¶¶ 31-32]. Plaintiff also agreed to expand the study without additional compensation in a revised report. [*Id.* at ¶ 34]. This revised report was submitted to Defendant. [*Id.* at ¶ 35].

The Counterclaims state that there were no further communications from Defendant until August 22, 2016, when Plaintiff received correspondence from Defendant's counsel. [*Id.* at ¶ 37]. Based on the above allegations, Plaintiff asserts Counterclaims for breach of contract, intentional interference with a business relationship, and fraudulent inducement to contract.

Defendant has moved to dismiss Plaintiff's Counterclaims and has also moved for judgment on the pleadings with respect to its claim against Plaintiff.

## II. POSITIONS OF THE PARTIES

The Court will summarize the Motions in the order in which they were filed.

### A. Defendant's Motion to Dismiss Plaintiff's Counterclaims

Defendant moves to dismiss Plaintiff's Counterclaims [Doc. 31] for three main reasons. First, Defendant argues that the Counterclaims are not permissible under the Federal Rules of Civil Procedure. Defendant explains that Rule 7(a) sets forth the permissible pleadings and that counter-counterclaims are not recognized. Defendant states that instead of filing counter-counterclaims, a party seeking to assert such claims should move to amend the complaint. Defendant states that in this case, Plaintiff has no complaint left to amend. Defendant argues that because its

Counterclaims are compulsory, Plaintiff is not permitted to file his Counterclaims in response thereto.

Second, Defendant submits that Plaintiff has impermissibly split this cause of action by asserting his Counterclaims. Defendant asserts that Plaintiff seeks to circumvent the dismissal of his Complaint by alleging additional claims, based on the same facts and same conduct, which should have been asserted in the original Complaint. Defendant argues that the doctrine of claim preclusion prevents Plaintiff from filing his Counter-Counterclaims.

Finally, Defendant asserts that even assuming Plaintiff's Counter-Counterclaims are procedurally permissible, they fail to state a claim upon which relief can be granted. Defendant argues that Plaintiff bases his breach of contract claim on the allegation that Defendant breached the confidentiality agreement by sharing Plaintiff's draft article. Defendant states that the Agreement, however, provides that the terms of the contract shall be kept confidential. Defendant submits that there is no language in the Agreement that requires Defendant to keep Plaintiff's draft article confidential. Defendant further argues that Plaintiff did not cite to any facts to support his claims for intentional interference with business relationships and fraudulent inducement to contract.

Plaintiff responds that the Federal Rules and supporting case law clearly show a counterclaim to a counterclaim is proper. Plaintiff argues that Defendant has omitted case law within the Sixth Circuit that is opposite to its arguments. Further, Plaintiff states Defendant's argument that Plaintiff was required to bring any other legal claim within the declaratory judgment action based on copyright law is misplaced and not supported by the relevant rule of law. Plaintiff submits that the Sixth Circuit has held in accord with the idea that claim preclusion does not apply to declaratory judgment actions. Finally, Plaintiff asserts that he has pled sufficient facts in his

Counterclaims. Plaintiff asserts that his breach of contract claim is based on the confidentiality language contained in the Agreement and Defendant's failure to provide Plaintiff with Dr. Ford's work in accordance with the coordination clause. Plaintiff asserts that he has also sufficiently pled the elements of intentional interference with business relationships and fraudulent inducement to contract.

Defendant filed a Reply [Doc. 34], asserting that the authorities Plaintiff cited in his brief all involve cases where the complaint had not been dismissed. Defendant argues that the Tennessee Court of Appeals has expressly held that a declaratory judgment action has the same preclusive effect as any other action. Finally, Defendant submits that even if Plaintiff can overcome these procedural hurdles, his Counterclaims should be dismissed because they rely on a misconstrued interpretation of the contract and Plaintiff has not sufficiently pled his other claims.

**B.      Defendant's Motion for Judgment on the Pleadings**

In its Motion, Defendant asserts that the central question that must be answered in this lawsuit is whether Plaintiff breached the Agreement by plagiarizing the work of non-parties and that question can be answered based on the pleadings and attached exhibits. Defendant argues that Plaintiff's plagiarism entitles it to a refund of its money because it amounted to a breach of the contract. Defendant asserts that on October 15, 2015, it asked Plaintiff to revise the report to mitigate the alleged infirmities of originality but that the revisions contained plagiarism. Defendant argues that it simply did not receive what it bargained for. With respect to Plaintiff's Counterclaims, Defendant argues that they lack any merit.

In Response, Plaintiff asserts that Defendant's Motion was again filed prematurely and must be denied because Defendant has not filed an answer to his Counterclaims, and therefore, the pleadings are not yet closed. Further, Plaintiff asserts that Defendant's Motion does not meet the

basic requirements under Rule 12(c). Plaintiff argues that with respect to his breach of contract claim, his work product under the Agreement is clearly a term of the Agreement, which should have been kept confidential, despite Defendant's denials.

In addition, Plaintiff contends that Defendant repeatedly claims plagiarism without any reference to a legal standard for defining this term. Plaintiff argues that "plagiarism" is not a recognized legal concept. Plaintiff states that Defendant's allegation that 50% of the work is plagiarized is inaccurate. Plaintiff argues that he submitted his revised work product and indicated the corrections and additions made pursuant to Defendant's request, and Defendant did not contact him for almost a year following the submission.

Plaintiff asserts that the parties agree that Defendant requested that Plaintiff revise his work product after oral instructions were provided to him in the conference call on October 16, 2015. Defendant requested that he utilize Grammarly and instructed Plaintiff to add a more favorable discussion of a specific case, along with other instructions. Plaintiff argues that Defendant has presented no evidence indicating that it checked the most recent version of Plaintiff's work product against Grammarly to confirm what the software program has revealed to Plaintiff.

Plaintiff further argues that the facts of this case and the controlling law do not support Defendant's Counterclaims. With respect to the breach of contract claim, Plaintiff asserts that Defendant cannot show that he did not complete what he was hired to do.

Defendant filed a Reply [Doc. 42], arguing that its breach of contract claim is actionable. Defendant states that it has not asserted that plagiarism itself is a legal claim but that plagiarism when in violation of a enforceable contract is legally actionable. Defendant asserts that Plaintiff's plagiarism is a material breach of the Agreement and that Defendant is entitled to recover damages.

## III.    STANDARD OF REVIEW

As mentioned above, Defendant has filed a Motion to Dismiss and a Motion for Judgment on the Pleadings.  The standard for ruling on a motion for judgment on the pleadings is the same as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Sensations Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).  For purposes of a motion for judgment on the pleadings or a motion to dismiss, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.  *Sun Life Assur. Co. of Canada v. Conestoga Trust Services, LLC,* No. 3:14-cv-539, 2015 WL 5714542, at *2 (E.D. Tenn. Sept. 29, 2015) (citing *J.P. Morgan Chase Bank v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).  "Thus, the court will grant the plaintiff's motion if (1) the admissions in the defendants' Answer entitle the plaintiff to judgment as a matter of law, and (2) the defendants' affirmative defenses do not require factual development."  *Founders Ins. Co. v. Bentley Entertainment*, LLC, No. 3:12-cv-01315, 2013 WL 3776311, at *8 (M.D. Tenn. July 18, 2013) (quoting *Crossville, Inc. v. Kemper Design Center, Inc.*, No. 2:09-0120, 2010 WL 2650731, at *2 (M.D. Tenn. July 2, 2010)).

Further, the Court observes that "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss."  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).  "In addition, when a document is referred to in the pleadings and is  integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."  *Id.*

## IV.    ANALYSIS

The Court has reviewed the parties' filings, and for the reasons further explained below, the Court will **GRANT** Defendant's Motion to Dismiss [**Doc. 31**] and **DENY** Defendant's Motion for Judgment on the Pleadings [**Doc. 35**].

### A.    Motion to Dismiss

As mentioned above, Defendant asserts that Plaintiff's Counterclaims are not permissible under Rule 7(a).  Further, Defendant argues that Plaintiff cannot split his cause of action by alleging such a claim when the claim should have been alleged in his Complaint.  Finally, Defendant submits that Plaintiff failed to plead sufficient facts to establish the claims for which relief can be granted.

The Court will address Defendant's arguments separately.

### 1.    Rule 7(a)

In the instant matter, Plaintiff filed a Complaint, and Defendant filed an Answer to the Complaint and a Counterclaim.  Later, Defendant moved for judgment on the pleadings, and the Court thereafter dismissed Plaintiff's Complaint.  After Plaintiff's Complaint was dismissed, he filed an Answer to Defendant's Counterclaim and filed his own Counterclaims against Defendant. The question before the Court is whether Plaintiff may file his Counterclaims after his Complaint has been dismissed.

Federal Rule of Civil Procedure 7(a) states that only the following pleadings are allowed:

(1)    a complaint;
(2)    an answer to a complaint;
(3)    an answer to a counterclaim designed as a counterclaim;
(4)    and answer to a crossclaim;
(5)    a third-party complaint;
(6)    an answer to a third-party complaint; and
(7)    if the court orders one, a reply to an answer.

Rule 13 further explains the difference between compulsory counterclaims and permissive counterclaims. Defendant asserts that courts have only allowed such counterclaims under the Federal Rules when the counterclaims are compulsory in response to a defendant's permissive counterclaims. As Plaintiff pointed out, however, other courts have expressly held otherwise. *See Power Tools & Supply, Inc. v. Cooper Power Tools, Inc.*, No. 05-CV-73615, 2007 WL 1218701, at *3 (E.D. Mich. Apr. 20, 2007) (rejecting the line of "cases which have limited counterclaims in reply to a compulsory counterclaims asserted in reply to a defendant's permissive counterclaims").

The Court observes that there is a split of authority on this issue. The Court, however, has considered the parties' positions and finds that Plaintiff's Counterclaims are impermissible. *Feed Mgmt. Sys., Inc. v. Brill*, 518 F. Supp. 2d 1094, 1096 (D. Minn. 2007) ("A counterclaim-in-reply is a permissible pleading when it is a compulsory reply to a permissive counterclaim."). If Plaintiff's position were correct, then the pleadings may never close. For instance, Defendant could very well, in response to Plaintiff's Counterclaims, file additional counterclaims. At some point, the pleadings must close. Accordingly, the Court finds that Plaintiff's Counterclaims are impermissible.

### 2. Failure to State a Claim

Even if the Court determined Plaintiff's Counterclaims were permissible, the Court agrees with Defendant that a number of Plaintiff's Counterclaims should be dismissed for failure to state a claim upon which relief can be granted. Here, Plaintiff has alleged claims for breach of contract, intentional interference with a business relationship, and fraudulent inducement to contract. With respect to the breach of contract claims, Plaintiff pleads that Defendant breached the confidentiality clause by revealing his work to a third-party and by refusing to provide Plaintiff

with Dr. Ford's work.[1]  In Plaintiff's Counterclaim, he alleges that the Agreement provides that the "terms of the agreement shall be kept confidential by the parties and may not be disclosed to any third party . . ." and cites to [Doc. 1-3 at 3].  The provision Plaintiff cites to in his Counterclaim states as follows, "The terms of this agreement shall be kept confidential by the parties and may not be disclosed to any third party, except for the attorneys, accountants and other professional advisors of the parties on a 'need to know' basis, or as disclosure may otherwise be required by law, or as specified above."  [Doc. 1-3 at 3].  The facts of the Counterclaim do not allege that the *terms* of the Agreement were revealed, but instead, allege that Plaintiff's Initial Report was not kept confidential.  Accordingly, the Court finds this claim implausible on its face because the Agreement does not provide that Plaintiff's work will be kept confidential.

Plaintiff also alleges intentional interference with a business relationship.  The parties agree that the elements required to show intentional inference with a business relationship are as follows:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means, and finally, (5) damages resulting from the tortious interference.

---

[1] In its Motion to Dismiss, Defendant does not move to dismiss Plaintiff's breach of contract claim relating to Defendant's alleged refusal to provide Plaintiff with Dr. Ford's report. In its Motion for Judgment on the Pleadings, Defendant asserts that nothing in the Agreement provides that Defendant was required to allow Plaintiff to review the work of Dr. Ford.  [Doc. 36 at 2].  Specifically, the Agreement states, "The output for [Plaintiff's] research and analysis will be a written report that will be coordinated with Dr. George Ford for inclusion in a larger report that will include his own economic analysis of municipal broadband systems."  [Doc. 1-3 at 3]. The Agreement does not state that Defendant is required to provide Plaintiff with Dr. Ford's work.

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (other citations omitted).

Defendant asserts that Plaintiff fails to identify what existing or prospective business relationship Defendant allegedly interfered. Further, Defendant argues that Plaintiff fails to allege that it used improper motives in communicating with the unnamed third party. Plaintiff responds that he chose not to name the third party in an effort to not embarrass that party or other fundraisers that Defendant relies on. Plaintiff asserts that he is not required to name the third party in his Complaint or Counterclaim in order to establish the tort of interference with a business relationship.

As noted above, the court in *Trau-Med* states that in order to establish intentional inference with a business relationship, a party must show "an existing business relationship with *specific* third parties or a prospective relationship with an *identifiable* class or third person." 71 S.W.3d at 701 (emphasis added). This language seems to suggest that the third party must be identified in order to state a claim for intentional interference with a business relationship. In any event, however, the Court finds that Plaintiff has not sufficiently alleged that Defendant used improper motives or improper means. As one court has explained, "Proof of an 'improper motive' requires proof that the defendant's predominate purpose was to injury the plaintiff." *Shelbyville Hosp. Corp. v. Mosley*, 69 F. Supp. 3d 718, 727 (E.D. Tenn. 2014) (citing *Trau-Med*, 71 S.W.3d at 701 n. 5). "Further, improper interference includes 'those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules, . . . violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship, . . . and those methods that violate an established standard of a trade or

profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition.'" *Id.* (quoting *Trau-Med*, 71 S.W.3d at 701, n. 5).

Here, Plaintiff alleges that Defendant provided a draft of Plaintiff's work to a certain third party, and later, Defendant indicated to the third party that it claimed issues with Plaintiff's work. [Doc. 30 at ¶ 50]. Plaintiff alleges that this communication was a breach of contract by Defendant and such actions prevented him from continuing his business relationship with the third party. [*Id.*]. Plaintiff continues, "By communicating false and confidential information to a third party in an attempt for control and pecuniary gain, Defendant intentionally interfered with [Plaintiff's] business relationship with the third party." [*Id.* at ¶ 52].

The Court finds such allegations do not state a claim for intentional interference with a business relationship. First, the Court has already determined that Defendant did not breach the Agreement by providing a copy of Plaintiff's work product to a third party. Second, the remaining action alleged does not rise to the level of improper means as defined by *Trau-Med*. Specifically, Plaintiff alleges that Defendant indicated to a third party that Defendant had issues with Plaintiff's work. There are no allegations of violence, threats, or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship, or otherwise, unethical conduct, such as sharp dealing, overreached or unfair competition. *See Shelbyville Hosp. Corp.*, 69 F. Supp. 3d at 727.

Furthermore, in order to state a claim for intentional interference with a business relationship, a plaintiff must show that defendant had knowledge of that relationship and not a mere awareness of plaintiff's business dealings with others in general. *Trau-Med.*, 71 S.W.3d at 701. Here, Plaintiff merely asserts that because Defendant had a business relationship with third

parties, it knew that Plaintiff had a business relationship with such parties. [Doc. 30 at ¶¶ 48-50]. This allegation does not equate to Defendant having knowledge of a relationship but simply a mere awareness of Plaintiff's business dealings with others in general. Accordingly, the Court finds that Plaintiff has not plausibly alleged facts to show that Defendant intentionally interfered with a business relationship.

Finally, Defendant asserts that Plaintiff fails to sufficiently plead his fraudulent inducement to contract claim. Defendant argues that pursuant to Rule 9(b), in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Defendant states that Plaintiff pleads his fraud claim upon "information and belief" and fails to identify what outside information Defendant allegedly withheld and the identity of the alleged "phantom client or principal."

Plaintiff responds that he only used the language "upon information and belief" in one paragraph and that allegation goes directly to Defendant's knowledge, which no one else will know until further discovery takes place. Plaintiff states that he has spelled out his fraudulent inducement claim. Specifically, Plaintiff argues that he properly alleged that Defendant intentionally withheld the identity of a funding source for the project at issue in an effort to convince Plaintiff to do the work.

In order to state a claim for fraudulent inducement, a party must show:

    (1) a false statement concerning a fact material to the transaction;

    (2) knowledge of the statement's falsity or utter disregard for its truth;

    (3) intent to induce reliance on the statement; and

    (4) reliance under circumstances manifesting a reasonable right to rely on the statement;

(5) an injury resulting from the reliance.

*Kelly v. Int'l Capital Res., Inc.*, 231 F.R.D. 502, 517 (M.D. Tenn. 2005) (other citations omitted). With respect to fraud claims, Rule 9(b) requires that such claims be pled with particularity. Fed. R. Civ. P. 9(b).

In his Counterclaim, Plaintiff alleges that Defendant represented it would be raising outside funds to support Plaintiff's work but that Defendant was still the client. [Doc. 30 at ¶ 54]. Plaintiff contends that Defendant intentionally withheld information about soliciting outside funds. [*Id.* at ¶ 59]. Plaintiff states that Defendant "was aware at the time of certain third-party business relationships of [Plaintiff], which could be compromised with respect to future work prospects if [Plaintiff] chose to work for [Defendant]." [*Id.*]. Plaintiff alleges that he "faced potentially serious reputational damage if [he] contracted with [Defendant] for an independent analysis based on this secret fact known only to [Defendant] and not to [Plaintiff]—in effect having an undisclosed additional phantom client or principal." [*Id.*].

The Court agrees with Defendant that Plaintiff's claim is not pled with particularity as required by Rule 9. Plaintiff does not identify this third-party that is at the heart of his fraud claim, nor does he allege facts to support that Defendant intentionally withheld information about soliciting funds. In paragraph 55 of Plaintiff's Counterclaim, Plaintiff states that he knew Defendant was raising outside funds to support the work. Thus, the Court finds that Defendant's argument is well taken.

### 3. Claim Preclusion

Finally, Defendant argues that claim preclusion prevents Plaintiff from litigating his Counterclaims. In order to establish claim preclusion, Defendant must show: (1) a final judgment on the merits in a prior action, (2) a subsequent suit between the same parties or their privies, (3)

an issue in the second lawsuit that should have been raised in the first, and (4) the claims in both lawsuits arise from the same transaction. *Wheeler v. Dayton Police Dept.*, 807 F.3d 765, 766 (6th Cir. 2015). Plaintiff argues that he has not filed a subsequent suit, and Defendant has not responded to this argument. Thus, Defendant has not convinced the Court that claim preclusion would apply given that there is only one lawsuit. In any event, however, the Court does not need to expressly rule on this issue because the undersigned has determined that Plaintiff's Counterclaims are impermissible for the reasons explained above.

Accordingly, the Court hereby dismisses Plaintiff's Counterclaims for breach of contract, intentional interference with a business relationship, and fraudulent inducement to contract.

### B.      Defendant's Motion for Judgment on the Pleadings

Defendant argues that there are two issues in this case: (1) did Plaintiff plagiarize the education study that Defendant paid him to create, and (2) if so, does the plagiarism entitle Defendant to a refund of the money paid to Plaintiff. Defendant states that the Court may review and compare Plaintiff's work to the works that Plaintiff plagiarized in order to answer the first question. As to the second question, Defendant argues that plagiarism is legally actionable and requires Plaintiff to return the funds. In addition, Defendant states that Plaintiff's Counterclaims lack merit and do not rebut the key inquiries for the Court's determination.

Plaintiff responds that Defendant's Motion is premature because the pleadings have not been closed, and therefore, the Motion must be denied. Further, Plaintiff argues that the Motion does not meet the basic requirements under Rule 12(c) because it is deficient in facts and law. In addition, Plaintiff submits that Defendant has not established the legal standards or evidence with respect to its allegations that Plaintiff plagiarized. Plaintiff disagrees with Defendant's contention that the most recent revision was just as unusable as the Initial Report. Plaintiff states that a

comparison shows seventy (70) identical words (exclusive of direct quotations from federal court opinions) that appear both in his work and a brief by the Department of Justice. Plaintiff argues that given that his work product was not to be published as a freestanding piece under the terms of the Agreement, there is no evidence that the alleged plagiarism would have been included in the final, coordinated report.

Further, Plaintiff states that Defendant did not contact him for almost a year following his submission. Plaintiff argues that both parties agree that he would revise his work following a conference call on October 16, 2015. Plaintiff submits that in April 2016, the Sixth Circuit had already heard the case that Defendant planned to intervene through a judicial filing with the coordinated report and that Defendant developed a pretext for pursuing litigation to recover the money paid to Plaintiff. Plaintiff argues that Defendant offers no evidence that it is entitled to the entire $115,000. Finally, Plaintiff argues that the parties dispute whether there was a breach of contract and whether the alleged breach caused any damage to Defendant.

As an initial matter, Plaintiff argues that Defendant's Motion is premature because at the time of its filing, the pleadings were not closed. In its previous Memorandum and Order [Doc. 29], the Court explained that pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." "As a number of other district courts in this Circuit have noted, 'the pleadings are not closed until all defendants have filed an answer, even when one defendant has filed a motion to dismiss instead of answering.'" *Wells Fargo Financial Leasing, Inc., v. Griffin*, 970 F. Supp. 2d 700, 705 (W.D. Ky. 2013) (quoting *Nationwide Children's Hosp., Inc. v. D.W. Dickey & Son, Inc. Emp. Health & Welfare Plan*, No. 2:19-cv-1140, 2009 WL 5247486, at *1 (S.D. Ohio Dec. 31, 2009)). In analyzing Federal Rule of Civil Procedure 7(a), courts have explained that "when an answer

includes a counterclaim and denominates it as such, Rule 7(a) requires an answer to that counterclaim." *Id.*

Here, Defendant has moved for judgment on the pleadings with respect to its Counterclaims against Plaintiff. *See* [Doc. 42 at 2, n 1] ("[Defendant] is seeking judgment on the pleadings on *its claims*[,] and the pleadings for its claims are closed.") (Emphasis in [Doc. 42]). Plaintiff has already filed an Answer to Defendant's Counterclaims. Further, the Court has dismissed Plaintiff's Counterclaims, thus no further pleadings are required at this juncture. Accordingly, the Court finds it appropriate to consider Defendant's arguments.

While Plaintiff argues that plagiarism is not an actionable claim, the Court agrees with Defendant that this case is ultimately whether Defendant received what it bargained for. *See Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011) ("In addition to the explicit terms, contracts may be accompanied by implied duties, which can result in a breach."). In Tennessee, in order to recover for a breach of contract claim, a claimant must establish: (1) the existence of a valid and enforceable contract, (2) a deficiency in the performance amounting to a breach, and (3) damages caused by the breach. *ARC LifeMed, Inc. v. AMC–Tenn., Inc.,* 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

The parties agree that a contract exists, but they disagree on whether Defendant has established a breach of the contract and damages. Defendant asserts that the Court can review Plaintiff's work and perform a side-by-side comparison of the work that Plaintiff allegedly plagiarized. In the present matter, however, the Court cannot rule on the filings that Plaintiff committed a material breach of the Agreement and that Defendant is owed $115,000 for the breach. The parties do not dispute that after Plaintiff completed his Initial Report, they orally agreed that Plaintiff should utilize a software program to correct the citations. Plaintiff did so and alleges that

he expanded on the scope of the Initial Report. Defendant asserts, and Plaintiff disagrees, that Plaintiff committed significant plagiarism, citing to seven alleged plagiarized passages. [Doc. 5-5 at 3]. The Court is not entirely convinced, based on the pleadings, that Plaintiff committed a material breach, resulting in a full refund to Defendant. Instead, the Court finds that the best course of action is to allow the parties to proceed to the bench trial so that the Court can hear arguments and evidence with respect to Defendant's claims. Further, the Court finds that Defendant has not sufficiently demonstrated why it could not use Plaintiff's Final Report. Defendant asserts that if it would have used Plaintiff's Final Report then it would have suffered "grave harm to its reputation, fundraising, and future similar endeavors if it would have published [Plaintiff's] plagiarized report." [Doc. 5 at 9]. The Court declines to make such a finding on the briefs submitted.

Finally, the Court observes that in a footnote, Defendant also states that in the alternative, it is entitled to recovery under an unjust enrichment theory or Plaintiff's breach of duty of good faith. For the same reasons as above, the Court finds these claims shall proceed to trial.

## V.    CONCLUSION

Accordingly, the Court finds that Defendant's Motion to Dismiss Plaintiff's Counterclaims [**Doc. 31**] is **GRANTED** and Defendant's Motion for Judgment on the Pleadings [**Doc. 35**] is **DENIED**. The parties **SHALL** proceed to trial.

**IT IS SO ORDERED**.

ENTER:

United States Magistrate Judge